# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **REGINA M. HICKS,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:09cv00074 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Regina M. Hicks, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

1

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hicks protectively filed her applications[1] for DIB and SSI on October 17, 2006, alleging disability as of September 30, 2006,[2] due to kidney, back and right ear problems, carpal tunnel syndrome, depression, anxiety and shoulder, back, neck and leg pain. (Record, ("R."), at 96-98, 101-07, 137, 142, 165, 187.) The claims were denied initially and on reconsideration. (R. at 52-54, 58, 61-63, 65-68, 70-71.) Hicks then requested a hearing before an administrative law judge, ("ALJ"). The hearing was held on July 31, 2008, at which Hicks was represented by counsel. (R. at 23-47.)

By decision dated April 29, 2009, the ALJ denied Hicks's claims. (R. at 10-22.) The ALJ found that Hicks met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2010. (R. at 13.) The ALJ also found that Hicks had not engaged in substantial gainful activity since May 1, 2005. (R. at 13.) The ALJ determined that the medical evidence established that Hicks

---

[1] Hicks filed previous applications for DIB and SSI on April 28, 2005. (R. at 10.) On October 9, 2006, Hicks withdrew her claim for benefits. (R. at 10.) Subsequently, on October 25, 2006, a dismissal was issued. (R. at 10.)

[2] At her hearing, Hicks amended her onset date of disability to September 30, 2006. (R. at 10, 27-28.) On her applications for DIB and SSI, she alleged an onset date of May 1, 2005. (R. at 96, 101.)

suffered from severe impairments, including a back disorder, pain, hypertension and obesity, but he found that Hicks did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13, 15.) The ALJ found that Hicks had the residual functional capacity to perform light work.[3] (R. at 16.) Therefore, the ALJ found that Hicks was unable to perform her past relevant work as a certified nurse's assistant. (R. at 20.) Based on Hicks's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Hicks could perform, including jobs as a day care center worker, a first aide attendant, a companion, a foster parent and a medical office clerk. (R. at 21.) Thus, the ALJ found that Hicks was not under a disability as defined under the Act and was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2010).

After the ALJ issued his decision, Hicks pursued her administrative appeals, (R. at 6), but the Appeals Council denied her request for review. (R. at 1-4.) Hicks then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2010). The case is before this court on Hicks's motion for summary judgment filed May 3, 2010, and the Commissioner's motion for summary judgment filed May 28, 2010.

---

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

## II. Facts

Hicks was born in 1970, (R. at 96, 101), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Hicks obtained her general equivalency development, ("GED"), diploma, and received certification as a certified nurse's assistant from Southwest Community College. (R. at 147.). Hicks has past work experience as a certified nurse's assistant. (R. at 31-32, 143.) Hicks testified at her hearing that her memory and concentration had improved since taking antidepressant medication. (R. at 34.) However, she stated that she still experienced symptoms of depression. (R. at 34.) Hicks reported that she took ibuprofen for pain. (R. at 193.) She reported that she could handle stress as long as she took her medication. (R. at 181.)

Dr. H.C. Alexander III, M.D., a medical expert, testified at Hicks's hearing. (R. at 38-40, 76.) Dr. Alexander testified that the major contributing factor to Hicks's residual functional capacity was her weight. (R. at 39.) He testified that Hicks could lift and carry items weighing up to 20 pounds occasionally and up to 10 pounds frequently. (R. at 39.) He stated that Hicks could sit, stand and/or walk for six hours in an eight-hour workday. (R. at 39.)

Olen Dodd, a vocational expert, also was present and testified at Hicks's hearing. (R. at 40-46, 77.) Dodd classified Hicks's work as a certified nurse's assistant as medium[4] and semiskilled, but stated that it could be identified as heavy

---

[4] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2010).

4

work.[5] (R. at 40.) He stated that Hicks's skills would be transferable to light work, such as jobs as a daycare center worker, a first aide attendant, a companion, a foster parent, a medical office clerk and a children's attendant. (R. at 41.) Dodd testified that a hypothetical individual of Hicks's age, education and work history, who was psychologically limited as set forth in psychologist Robert E. Spangler's report, could do the jobs previously identified. (R. at 44.) Dodd did, however, testify that he would not recommend the job as a medical office clerk based on Spangler's assessment of Hicks's judgment decision making ability. (R. at 44.) Dodd was asked to assume the same hypothetical individual, but who had no useful ability to deal with work stress and to demonstrate reliability. (R. at 45.) Dodd stated that there were no jobs available that such an individual could perform. (R. at 45.)

In rendering his decision, the ALJ reviewed records from Russell County Medical Center; Johnston Memorial Hospital; Dr. Felix E. Shepard Jr., M.D., a urologist; Norton Community Hospital; Teresa Roatsey, F.N.P., a family nurse practitioner; Dr. Kevin Blackwell, D.O.; Dr. Thomas Phillips, M.D., a state agency physician; Dr. Joseph Duckwall, M.D., a state agency physician; Dr. Tim Schwob, M.D.; Robert S. Spangler, Ed.D., a licensed psychologist; and Dr. Kevin Blackwell, D.O.

Prior to Hicks's alleged disability onset date of September 2006, she had a long history of left flank pain due to kidney stones and chronic kidney infections.

---

[5]Heavy work involves lifting objects weighing up to 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, she also can do medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2010).

(R. at 207-17, 228-47, 253-55, 264-80.) Dr. Felix E. Shepard Jr., M.D., a urologist, treated Hicks for these conditions from 2004 through 2005. (R. at 228-80.) In May 2005, Hicks underwent a successful left nephrectomy[6] to help with her pain and chronic infections. (R. at 248-52.) On May 25, 2005, Dr. Shepard reported that Hicks's examination was unremarkable. (R. at 270-72.) He reported that Hicks's mood indicated no abnormalities and that she did not appear to be depressed. (R. at 271.)

On August 18, 2005, Hicks saw Teresa Roatsey, F.N.P., a family nurse practitioner. (R. at 284-85.) Hicks stated that Dr. Shepard had released her to return to work, but that she could not do so because she was trying to get on disability. (R. at 284.) She stated that Dr. Shepard had told her to find a new physician because he had done all he could do for her. (R. at 284.) Roatsey reported that Hicks was alert and oriented. (R. at 284.) Hicks was in no acute distress. (R. at 284.) Hicks had full range of motion in her extremities. (R. at 285.) Roatsey diagnosed calf cramps. (R. at 285.)

On April 27, 2007, Dr. Kevin Blackwell, D.O., examined Hicks. (R. at 289-93.) Dr. Blackwell reported that Hicks did not appear to be in any acute distress. (R. at 291.) She was alert, cooperative and oriented with good mental status. (R. at 291.) Hicks's gait was symmetrical and balanced. (R. at 291.) She had some tenderness in the lumbar musculature on the left. (R. at 291.) Upper and lower joint examinations showed no effusions or obvious deformities. (R. at 291.) Upper and

---

[6]A nephrectomy is defined as a surgical removal of a kidney. *See* STEDMAN'S MEDICAL DICTIONARY, ("Stedman's"), 551 (1995.)

lower extremities had normal strength. (R. at 291.) Hicks's grip strength was good, and her fine motor movement skills were normal. (R. at 291.) Dr. Blackwell diagnosed chronic cervical/lumbar pain and right arm pain. (R. at 291.) Dr. Blackwell reported that Hicks could lift items weighing up to 50 pounds maximally and up to 10 pounds frequently. (R. at 292.) He reported that she should not perform above head reach activities, stooping, bending or squatting. (R. at 292.) He reported that she could occasionally kneel, repetitive stair-climb and ladder climb. (R. at 292.) Dr. Blackwell reported that Hicks could sit and/or stand for up to eight hours in an eight-hour workday. (R. at 292.) He found no environmental, hearing, visual or communicative limitations. (R. at 292.)

On May 15, 2007, Dr. Thomas Phillips, M.D., a state agency physician, reported that Hicks had the residual functional capacity to perform medium work. (R. at 294-300.) Dr. Phillips reported that Hicks could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 296.) He found that her ability to reach in all directions was limited. (R. at 296.) No visual, communicative or environmental limitations were noted. (R. at 296-97.) Dr. Phillips reported that Dr. Blackwell's assessment was given appropriate weight and was noted to be partially consistent with this assessment. (R. at 300.)

From May 24, 2007, through July 7, 2008, Hicks was treated by Dr. Tim Schwob, M.D., for complaints of arthritis, depression, obesity, chronic back pain and seasonal allergies. (R. at 310-24.) On May 24, 2007, Hicks stated that she was attempting to get on disability for degenerative disc disease, but had been denied. (R. at 316.) She requested an MRI of her back. (R. at 316.) On June 28, 2007,

Hicks complained of low back pain. (R. at 315.) She was tearful during the interview and stated that she had been dealing with increased depression. (R. at 315.) She stated that she had been molested as a child and had never dealt with it in counseling or otherwise. (R. at 315.) In July and August 2007, Hicks reported that her symptoms of depression had improved with medication. (R. at 312, 314.)

On September 12, 2007, Dr. Joseph Duckwall, M.D., a state agency physician, reported that Hicks had the residual functional capacity to perform medium work. (R. at 302-09.) Dr. Duckwall reported that Hicks could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 304.) He found that her ability to reach in all directions was limited. (R. at 304.) No visual, communicative or environmental limitations were noted. (R. at 304-05.) Dr. Duckwall reported that Dr. Blackwell's assessment was given appropriate weight and was partially consistent with this assessment. (R. at 308.)

On July 25, 2008, Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Hicks at the request of Hicks's attorney. (R. at 328-34.) Spangler noted no speech, vision or hearing difficulties. (R. at 328.) Hicks reported being sexually abused between the ages of five and 11. (R. at 329.) Hicks's affect was blunted, and her mood was depressed and anxious. (R. at 330.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Hicks obtained a verbal IQ score of 83, a performance IQ score of 76 and a full-scale IQ score of 78. (R. at 331, 333.) Spangler reported that Hicks's performance IQ and full-scale IQ scores were considered invalid and an underestimate due to erratic concentration and depression. (R. at 331.) Spangler diagnosed moderate post-

traumatic stress disorder and recurrent moderate to severe major depressive disorder. (R. at 332.) Spangler reported that Hicks had a then-current Global Assessment of Functioning score, ("GAF"),[7] of 55-60.[8]

Spangler completed a Medical Assessment Of Ability To Do Work-Related Activities, (Mental), indicating that Hicks had a limited but satisfactory, ability to follow work rules, to use judgment and to understand, remember and carry out simple instructions. (R. at 335-37.) He indicated that Hicks had a seriously limited ability to relate to co-workers, to maintain attention and concentration and to understand, remember and carry out detailed instructions. (R. at 335-36.) Spangler reported that Hicks had a limited, but satisfactory, ability to a seriously limited ability to interact with supervisors, to function independently and to maintain personal appearance. (R. at 335-36.) He reported that Hicks had a seriously limited to no useful ability to deal with the public, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 335-36.) Spangler reported that Hicks had no useful ability to deal with work stresses, to understand, remember and carry out complex job instructions and to demonstrate reliability. (R. at 335-36.) He further reported that Hicks was not capable of managing her own benefits. (R. at 337.)

---

[7]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994.)

[8]A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

On November 2, 2008, Dr. Blackwell again examined Hicks at the request of Disability Determination Services. (R. at 340-43.) Dr. Blackwell reported that Hicks was alert and cooperative and had good mental status. (R. at 342.) Hicks's gait was symmetrical and balanced. (R. at 342.) Upper and lower joints had no effusions or obvious deformities. (R. at 342-43.) She had negative Tinel's sign[9] at the wrist. (R. at 343.) Her upper and lower reflexes were good and equal bilaterally. (R. at 343.) X-rays of Hicks's lumbar spine showed mild degenerative changes and disc space narrowing at the L4-L5 and L5-S1 levels. (R. at 338.) Dr. Blackwell diagnosed chronic low back pain, history of left kidney resection and elevated blood pressure. (R. at 343.)

Dr. Blackwell reported that Hicks could occasionally lift and carry items weighing up to 50 pounds, frequently lift and carry items weighing up to 20 pounds and continuously lift and carry items weighing up to 10 pounds. (R. at 344.) He reported that Hicks could sit for up to eight hours in an eight-hour workday and that she could do so for up to one hour without interruption. (R. at 346.) Dr. Blackwell reported that Hicks could stand for up to four hours in an eight-hour workday and that she could do so for one hour without interruption. (R. at 346.) He reported that Hicks could walk for up to two hours in an eight-hour workday and that she could do so for up to one hour without interruption. (R. at 346.) He reported that Hicks could occasionally reach overhead and in all directions, handle and finger objects and frequently feel, push and pull. (R. at 347.) She could continuously operate foot controls. (R. at 347.) Dr. Blackwell reported

---

[9] Tinel's sign is a tingling sensation in the distal extremity of a limb when percussion is made over the site of an injured nerve, indicating a partial lesion or early regeneration in the nerve. *See* Stedman's at 837.

that Hicks could frequently kneel, occasionally climb stairs and ramps, balance and crouch and never climb ladders or scaffolds, stoop or crawl. (R. at 348.) He reported that she should never work around unprotected heights and that she could frequently work around moving machinery, humidity and wetness, dust, odors, fumes and pulmonary irritants, temperature extremes, vibrations and loud noise and could frequently operate a motor vehicle. (R. at 349.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age,

education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated April 29, 2009, the ALJ denied Hicks's claims. (R. at 10-22.) The ALJ determined that the medical evidence established that Hicks suffered from severe impairments, including a back disorder, pain, hypertension and obesity, but he found that Hicks did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13, 15.) The ALJ found that Hicks had the residual functional capacity to perform light work. (R. at 16.) Therefore, the ALJ found that Hicks was unable to perform her past relevant work as a certified nurse's assistant. (R. at 20.) Based on Hicks's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Hicks could perform, including jobs as a day care center worker, a first aide attendant, a companion, a foster parent and a medical office clerk. (R. at 21.) Thus, the ALJ found that Hicks was not under a disability as defined under the Act and was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Hicks argues that the ALJ erred by improperly scheduling a consultative neurological evaluation with Dr. Blackwell. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5.) Hicks argues

that Dr. Blackwell evaluated her in April 2007, which calls into question Dr. Blackwell's ability to provide a new and objective evaluation. (Plaintiff's Brief at 5.) She also argues that Dr. Blackwell is not a neurologist. (Plaintiff's Brief at 5.) Hicks also argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 5-6.) Finally, Hicks argues that the ALJ erred by failing to give full consideration to the findings of Spangler in assessing her mental impairment. (Plaintiff's Brief at 7-8.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§

404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Hicks first argues that the ALJ erred by improperly scheduling a consultative neurological evaluation with Dr. Blackwell. (Plaintiff's Brief at 5.) Based on Hicks's testimony at the hearing, the ALJ determined that it was necessary to have a neurological examination to further evaluate Hicks's symptoms. (R. at 10, 18, 46.) *See* 20 C.F.R. §§ 404.1519a(a)(2), 416.919a(a)(2) (2010) (authorizing an ALJ to purchase a consultative examination to secure needed medical evidence not contained in the file).

The neurological examination at issue here was performed by Dr. Blackwell in November 2008. (R. at 339-50.) The ALJ recognized that Dr. Blackwell had previously examined Hicks in April 2007 with regard to her claim at the initial determination level. (R. at 18, 38-39, 289-93.) Pursuant to the ALJ's request, Dr. Blackwell specifically performed a neurological examination and reported his findings in a "Neurological Evaluation Supplement." (R. at 339.) His findings were unequivocal and showed that Hicks had normal muscle strength in her upper and lower extremities, intact reflexes and normal coordination, gait and station. (R. at 339.) There is no indication that Dr. Blackwell's neurological examination was deficient or otherwise incomplete. In addition, there is no indication that Dr. Blackwell's findings were not based on objective testing methods. As the ALJ noted, Dr. Blackwell's latter report in November 2008 was actually more restrictive in terms of Hicks's physical limitations than what he reported in April 2007. (R. at 19, 292, 344-49.) Neither Dr. Blackwell nor his findings suggested

that further neurological evaluation or testing was required by a specialist. In fact, Dr. Blackwell's findings corroborated other medical evidence in the record, which showed that Hicks did not have an impairment that caused severe neurological deficits and that she took nothing stronger than ibuprofen for pain. (R. at 311-12, 314-16, 318-21.)

The medical evidence includes an x-ray of Hicks's lumbar spine which shows only mild degenerative changes. (R. at 338.) In August 2005, Hicks had full range of motion in her extremities. (R. at 285.) Two state agency physicians found that she could perform medium work. (R. at 294-300, 302-09.) Based on my review of the ALJ's decision, he accounted for Hicks's obesity and low back pain when determining that she had the residual functional capacity to perform light work. (R. at 13, 16.) Based on this, I find that substantial evidence exists to support that the ALJ properly considered Dr. Blackwell's November 2008 examination, along with his earlier April 2007 consultative report, and that no error was committed here.

Hicks also argues that the ALJ erred by failing to find that she suffered from a severe mental impairment, and that he failed to give full consideration to the findings of Spangler in assessing her mental impairment. (Plaintiff's Brief at 5-8.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2010). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out

and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2010). The Fourth Circuit held in *Evans v. Heckler,* that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

In this case, the ALJ found that Hicks had a mental impairment, but found that it was nonsevere because it did not cause more than a minimal limitation on her ability to perform basic mental work activities. (R. at 14.) The ALJ noted that Hicks had not sought mental health treatment for her psychological difficulties. (R. at 14.) He noted that Hicks had not required any emergency room treatment or inpatient hospitalizations for any mental health problem. (R. at 14.) The ALJ further noted that Hicks did not participate in any mental health counseling or therapy. (R. at 14.) The record shows, and the ALJ noted, that Hicks was diagnosed with depression and that she was prescribed Citalopram by her treating physician. (R. at 14, 310-24.) However, Hicks reported in July 2007 that her symptoms of depression had improved since taking the medication. (R. at 314.) In August 2007, Hicks reported having "much improvement" in her depression since starting the Citalopram. (R. at 312.) After August 2007, subsequent treatment notes showed that Hicks's treatment for depression consisted of only refills of Citalopram. (R. at 310, 320, 322-23, 325-26.) Treatment notes dated January,

March, April, June and July 2008, show no indication that Hicks had any additional mental complaints or mental difficulties. (R. at 310-11, 317-21.) In addition, Hicks testified at her hearing that her symptoms of depression had improved since taking medication. (R. at 34.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ considered Spangler's assessment and noted that it was inconsistent with the evidence of record. (R. at 20.) The ALJ noted that Spangler evaluated Hicks one time, and none of Hicks's treating physicians opined or documented that she had significant ongoing mental symptoms as described by Spangler. (R. at 20, 328-37.) In fact, none of the treatment notes indicated that Hicks had "erratic concentration" or difficulty with behaving in an emotionally stable manner or demonstrating reliability. (R. at 331, 336.) As noted above, once Hicks began taking medication, her symptoms improved, and she voiced no other complaints of depression to her treating physician. In November 2008, Dr. Blackwell noted that Hicks was alert, cooperative and had a "good mental status." (R. at 342.) The ALJ also noted that Hicks failed to seek regular mental health treatment as recommended by Spangler, which suggested that her mental condition was not as severe as she claimed. (R. at 14.) Based on this, I find that the ALJ properly weighed the medical evidence of record.

Based on the above, I find that sufficient evidence exists to support the ALJ's finding with regard to Hicks's residual functional capacity. I find that substantial evidence exists to support the ALJ's finding that Hicks did not suffer

from a severe mental impairment. I also find that substantial evidence exists to support the ALJ's weighing of the evidence.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding that Hicks did not suffer from a severe mental impairment;

2. Substantial evidence exists to support the ALJ's finding with regard to Hicks's residual functional capacity;

3. Substantial evidence exists to support the ALJ's weighing of the medical evidence; and

4. Substantial evidence exists to support the ALJ's finding that Hicks was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Hicks's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. §

636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: February 3, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE